UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-251-17 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| JOHN DICKSON, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant John Dickson ("Dickson") for a compassionate release due to COVID-19 circumstances. (Doc. No. 566 ["Mot"].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 568 ["Opp'n"]), and Dickson has filed a supplement. (Doc. No. 570 ["Suppl."].) For the reasons that follow, Dickson's motion, as supplemented, is denied without prejudice.

I. BACKGROUND

On April 24, 2019, Dickson was one of twenty-one individuals charged in a drug conspiracy. (Doc. No. 13 [Indictment].) On October 4, 2019, pursuant to a plea agreement, Dickson entered a plea of guilty to Count One of the Indictment, charging conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C). (10-4-2019 Minutes; Doc. No. 338 [R&R]; Doc. No. 406 [Order Adopting R&R and Accepting Guilty Plea]; Doc. No. 407 [Plea Agreement].)

On February 6, 2020, the Court sentenced Dickson to a term of 18 months imprisonment on Count One, with credit for time served. (2-6-2020 Minutes; Doc. No. 527 [Judgment].) Dixon is currently serving his sentence at FCI Elkton and has a projected release date of December 31, 2020. *See* https://www.bop.gov/inmateloc/ (last visited 4-16-2020).

On April 6, 2020, Dickson filed the present motion, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), "for an order reducing his sentence to time served based on the extraordinary and compelling circumstances that have presented through the COVID-19 pandemic as well as the impact on Mr. Dickson by his continued incarceration." (Mot. at 3966.) In the event the Court grants his request for a sentence reduction, he further requests that he "immediately be placed on supervised release, with the condition that he be placed on home confinement until December 31, [2020], the date his custodial sentence is currently due to expire" (*Id*. at 3979.)

In support of his motion, he notes that the conditions at FCI Elkton are "dire" as at least three inmates have already died from COVID-19, and Governor Mike DeWine has authorized the National Guard to assist in addressing the health crisis developing there. (*Id*. at 3968.) This is of special concern to Dickson because he claims that—subsequent to entering the federal prison system—he has developed asthma and has suffered from "multiple respiratory issues[.]" (*Id*. at 3967.) According to Dickson, he has also experienced "tremendous anxiety over the fear" of contracting COVID-19 and is also worried about the "well-being and health of his family." (*Id*. at 3968.) "Not being able to be with them during this pandemic[, Dixon maintains,] is very stressful." (*Id*.)

The government argues that Dickson's motion should be denied because he has not exhausted his administrative remedies, and because Dickson has not made the requisite showing

2

under 18 U.S.C. § 3582. (Opp'n at 3985.) Dickson does not represent that he has exhausted his administrative remedies but suggests that the Court can waive this requirement. (Mot. at 3975.) He further concedes that prior to COVID-19, he did not present the extraordinary and compelling circumstances necessary for a compassionate relief, but he suggests that "COVID-19 . . . is a game-changer to the application of compassionate release statutes." (*Id.* at 3974.)

## II. DISCUSSION

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt

. . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.

Dickson does not represent that he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf, or that 30 days has passed since the warden of his facility received a request from him to file such a motion. While he suggests that he "may not have met the exhaustion requirement by the statute, he requests this Court waive the requirement under" the "dire and narrow circumstances" surrounding the pandemic and its impact on FCI Elkton.[1] (Mot. at 3975.)

Courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19. *Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); with *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020) (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020

---

[1] In the supplement, Dickson's counsel represents that, subsequent to filing the present motion, counsel learned from Dickson's family that Dickson did make a request to the warden for release. Counsel offers no documentation to support this hearsay, suggesting only that he has asked a third-party to obtain the documentation. (Suppl. at 3998.) More importantly, counsel does not indicate *when* the request was made, or whether the requisite 30-day period has expired since the alleged motion was made. Accordingly, the Court finds that Dickson has not demonstrated that he has satisfied the exhaustion requirement.

WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30-day period before seeking a compassionate release from the district "present[ed] a glaring roadblock foreclosing compassionate release[.]" *Raia*, 2020 WL 1647922, at *__. In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68 year old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in case like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*Id*.

The Court agrees with the reasoning and logic of the Third Circuit. In addition to a lack of any indication in the language of § 3582(c)(1)(A) that the exhaustion requirement is discretionary or may be waived, the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and

compelling reasons" for release—the opportunity to address such requests in the first instance. Accordingly, the Court "will not read an exception into § 3582(c)(1) which does not exist[,] and Dickson's motion is denied for failure to exhaust his administrative remedies. *See Johnson*, 2020 WL 1663360, at *6 (denying inmate's motion for compassionate release for failure to exhaust administrative remedies).

Of course, even if Dickson could overcome this "glaring roadblock," Dickson would not be entitled to relief on the basis of the present motion. The existence of "extraordinary and compelling reasons" is governed by the Federal Sentencing Guidelines. Under the guidelines, a defendant must establish he is suffering from either a terminal illness or a "serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1. Those circumstances do not include a defendant being at a higher risk of contracting an illness in prison.

Moreover, Dickson has not even established that he is at a higher risk of contracting COVID-19. In the Final Presentence Investigation Report, prepared in January of this year, Dickson reported that he was "not under the care of a physician and [was] not taking any prescribed medication." (Doc. No. 500 ["PSR"] at 3440.) Although he now claims that in the past few months he has developed asthma and "multiple respiratory issues," he offers no proof, such as medical records, that would substantiate this claim. His motion, therefore, would fall woefully short of establishing a right to a compassionate release.[2] *See, e.g., United States v. Clark*, No. 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (denying

6

motion for compassionate release, in part, because inmate failed to provide medical records to substantiate medical claims).

Further, if the Court entertained Dickson's motion on the merits, it would be without authority to modify his sentence, as he requests, to include a component of home confinement because that authority rests with the BOP. *See Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) (holding "[w]hen a court sentences a federal offender the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)[.]"); *see, e.g., United States v. Curry*, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act [of 2018] gives the *Attorney General* [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original). The government notes that the BOP "begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, starting with inmates incarcerated at . . . FCI Elkton . . . to determine which inmates are suitable for home confinement." Fed Bureau of Prisons, Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp, April 5, 2020 (last accessed April 16, 2020).[3] The BOP has instructed that "inmates do not need to apply to be considered for home confinement" under this directive, but "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case

---

[2] Again, the BOP is in a better position than this Court to evaluate Dickson's current health and medical conditions that he contends began after he commenced serving his federal sentence.

[3] According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id*.

Manager." *Id*. The fact that the BOP has already begun to identify vulnerable inmates at FCI Elkton for release to home confinement represents further proof that it is in the best position to quickly consider whether the relief Dickson now seeks is appropriate.

### III. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's brief opposing compassionate release, Dickson's motion, as supplement, for a compassionate release is denied without prejudice.

**IT IS SO ORDERED**.

Dated: April 17, 2020

        **HONORABLE SARA LIOI**
        **UNITED STATES DISTRICT JUDGE**